### ADAMS v. GRAND ISLAND & W. C. R. CO. *et al.*

1. Comp. Laws, § 5471, gives a lien to one who performs labor in the construction of a railroad under a contract with the owner, contractor, or subcontractor, and provides that such person may file with the clerk in the county where the property is situated, within 60 days after the last day of the month in which such labor was performed, a lien which shall be binding on the erection, excavation, embankment, bridges, road-bed, or right of way, and on the land, etc., "in the county or judicial subdivision in which the same is filed. In case the lien is sought to be enforced against the owner, the liability shall not be greater than his liability would have been to the contractor at the time the labor was performed," etc. *Held*, that the liability of the owner for labor performed under a contract with a contractor or subcontractor is limited to the amount due from the owner to such contractor or subcontractor under the contract or subcontract at the time the services were performed.

2. Comp. Laws, § 5485, declares every person aiding to construct a railroad pursuant to a contract not made "directly with the owner, proprietor, his agent or trustee," to be a "subcontractor." Section 5470 requires that, in order to avail himself of the benefit of the mechanic's lien law,

he  must file with the clerk of the circuit court of the county or judicial
subdivision in which the building, erection or other improvement to be
charged with the lien is situated, a just and true account of the demand
due him, after allowing all credits, and containing a correct description
of the property to be charged with said lien.   *Held*, that, where a sub-
contractor performs labor on one section only of a railroad, the "prop-
erty to be charged" with his lien is the entire road, and not merely the
one section.

(Opinion filed Oct. 5, 1897.)

Appeal from circuit court, Lawrence county.   Hon. A. J.
PLOWMAN, Judge.

Action by John Doyle against the Grand Island & Wyoming
Central Railroad Company and others to establish and enforce
a mechanic's lien.   From a decree in favor of plaintiff, defend-
ants other than defendant A. H. Fitch appealed.   Pending the
appeal, plaintiff assigned all his interest in the action to Wil-
liam E. Adams, who was substituted as plaintiff.   Reversed.

The facts are stated in the opinion.

*N. K. Griggs* and *Frawley & Laffey*, for appellants.

The postponement asked for should have been granted.
Stone v. Railroad, 3 S. D. 331, 53 N. W. 189.   A railroad is an
entirety and the policy of the law will not permit a lien to at-
tach to a single section thereof.   Brooks v. Railroad, 101
U. S. 443; Boston v. Railroad, 12 Am. & Eng. Ry. Cas. 263;
Knapp v. Railroad, 7 Id. 394; Cox & Arnold v. Railroad;
44 Cal. 18; St. Louis Bridge Co. v. Railroad, 72 Mo. 664;
Ireland v. Railroad, 20 Id. 493; Cranston v. Union Trust Co.
11 Id. 638; Jones on Liens, § 1619; Railroad v. Wilcox, 43
Am. & Eng. Ry. Cas. 629, S. C., 23 N. E. 506; Loan & Trust
Co. v. Railroad, 47 Am. & Eng. Ry. Cas. 271.   Plaintiff must
have filed his lien within 60 days from the last day of each
month in which he performed his labor, and his right is meas-
ured by the amount due from the owner to the contractor, or
from the person who occupies the position of owner to his em-
ployer.   Utter v. Crane, 37 Ia. 631; Cutler v. McCormack, 48 Id.
406; Stewart v. Wright, 3 N. W. 144; Bowland v. Railroad, 16

Id. 355; Andrews v. Burdick, 16 Id. 276; Nash v. Railroad, 17 Id. 106; Martin v. Morgan, 20 N. W. 184; Parker v. Scott, 47 Id. 1073; Carman v. McIncrow, 13 N. Y. 71; Lumbard v. Railroad, 55 N. Y. 491; Crane v. Genin, 16 N. Y. 127; Van Cliefs v. Van Vetchen, 29 N. E. 1017.

*W. O. Temple* and *Rice & Polley*, for respondent.

The court properly directed a lien upon a single section of the railroad. Comp. Laws, § 5471; Powder Co. v. Railroad, 8 L. R. A. 700; Hill v. Railroad, 11 Wis. 215.

FULLER, J. This action to enforce a mechanic's lien upon section 101, being one mile of the roadbed and right of way of the Grand Island & Wyoming Central Railway, situated in Lawrence county, of this state, resulted in a decree of foreclosure, from which, and from an order overruling a motion for a new trial, all the defendants excepting A. H. Fitch appeal to this court.

The action was instituted by and in the name of John Doyle, as plaintiff, against Alvin H. Fitch, the railroad companies named above, and John Fitzgerald and David Fitzgerald, as copartners, doing business under the firm name and style of John Fitzgerald & Bro.; but, since the trial below and the appeal to this court, plaintiff assigned all his right, title and interest herein to William E. Adams, who has been substituted as plaintiff; and, the defendant John Fitzgerald having subsequently died, his wife, Mary Fitzgerald, who was duly appointed his administratrix, has been substituted as party defendant,—all of which was done pursuant to an order of this court, entered upon the stipulation of counsel for the respective parties, and in accordance with which all further proceedings will be had under the modified title above indicated.

The contractual relations existing between the parties, so far as disclosed by the record, and the facts essential to a determination of the questions of law presented, may be briefly stated as follows: Some time early in the year 1890, Frankland

H. Head, apparently on behalf of the owner, the Grand Island & Wyoming Central Railroad Company, entered into a contract with John Fitzgerald & Bro. for the construction of a continuous line of railroad 106 miles in length, within this state, beginning in Fall River county, at a point known as "Siding Seven," and extending across the counties of Custer and Pennington, into Lawrence county, terminating therein at a place or station called "Kirk." The line is operated by the Chicago, Burlington & Quincy Railroad Company, under a lease with the owner. Alvin H. Fitch graded section 101, all within the county of Lawrence, under a subcontract with John Fitzgerald & Bro.; and plaintiff's assignor, under a verbal contract with Fitch, performed labor thereon, to recover for which this proceeding was instituted, to enforce his lien upon said section. The complaint states that under his contract with Fitch, and between the 31st day of October, 1890, and the 10th day of January, 1891, plaintiff performed labor upon section 101 of the defendants' roadbed, amounting in the aggregate to $700, and no part of which has been paid, and that his lien therefor was filed upon said section in Lawrence county on the 28th day of February, 1891; "that the defendants John Fitzgerald & Bro. are now indebted to Alvin H. Fitch in the sum of $10,000 and more on account of said grading and construction ·of said section 101 of said railroad bed; and that the said Grand Island & Wyoming Central Railroad Company, owner, as aforesaid, and the Chicago, Burlington & Quincy Railroad Company, lessee and agent, as aforesaid, are now indebted to John Fitzgerald & Bro., on account of said construction of said section 101 of said railroad bed, in the sum of $10,000 and more; and that said sum of $10,000 is sufficient to satisfy the plaintiff's lien and all other prior liens upon said section 101 of said railroad bed." The defendants John Fitzgerald & Bro. admit the existence of their contract to grade and construct the continuous line of railroad mentioned in the complaint, and also admit the execution of a contract with Fitch to grade section 101 thereof; but

they deny that "they are now, or were at the date of the commencement of this action, or at the date of the filing of the alleged lien mentioned in the complaint, indebted to the defendant Alvin H. Fitch in the sum of ten thousand ($10,000) dollars, or in any other sum whatever, and allege the fact to be that the said Alvin H. Fitch has been fully paid for all labor done and performed under his said .contract for the construction of section one hundred and one, and, in addition thereto, a large sum in excess of the amount due under said contract, to-wit, the sum of about six thousand ($6,000) dollars, which said sum was paid by these defendants under the terms of their said contract with the said Alvin H. Fitch, long prior to the filing of the alleged lien herein."

In their separate answer, the railroad companies denied on information and belief that there was at the time mentioned 'in the complaint anything due defendant Fitch upon his contract or from the railroad companies to Fitzgerald & Bro.; and they also denied that plaintiff has acquired a lien upon the property in question. After issue thus joined, and when the cause was reached for trial before the court without a jury, counsel for defendants applied in due form for a postponement of the hearing, on the ground of the absence of material witnesses, who were shown to be in actual attendance upon the United States circuit court at the city of Omaha, in the capacity of witnesses in and parties to a cause there being tried; and, under the circumstances, the showing as to diligence, inability to prove enumerated facts by other witnesses, and ability to secure the attendance of said witnesses as soon as discharged from the United States Court, is confessedly sufficient to render a denial of the application an erroneous exercise of discretion in case the facts alleged in the answers constitute any defense to the action. Stone v. Railway Co., 3 S. D. 330, 53 N. W. 189.

No evidence was offered in support of the answers, and, at the conclusion of plaintiff's testimony, counsel for the defendants moved the court for a dismissal of the action for want of

equity, for the following reasons: "There is no evidence tending to show that there is anything now due or owing, or was due and owing, from the owner of this road to the contractor or subcontractor, at any time prior to the filing of this lien, or the date of the filing of it, or the bringing of this suit. That there is no evidence tending to show that, in fact, there was ever any contract made by John Fitzgerald & Bro. with the Grand Island & Wyoming Central Railway Company, or the Chicago Burlington & Quincy Railroad Company, against whose property this alleged lien is filed. That the evidence, record, and pleadings in this case show that this railroad grade was built under one continuous contract, through the several counties of Fall River, Custer, Pennington, and Lawrence; and there is no evidence that this alleged lien was filed on any portion of the alleged railroad in either of these counties except upon section 101, in Lawrence county; and that there is no evidence tending to show that there was any liability of the alleged owner of this road to any person whomsoever under and by virtue of any contract at the time this alleged labor was done upon this line of railroad." From the evidence offered over the objection of counsel for defendants, it appears that plaintiff's assignor, who was employed by Fitch as foreman or "walking boss," furnished, under the verbal contract now relied on, certain teams that worked on section 101 continuously during the months of November and December, 1890, and from January 1, 1891, to the 10th day of that month, at an agreed price of $4.50 per day for each team, and by reason of which said Fitch is indebted in the sum of $700. In the lien filed on the 28th day of February, and which furnishes the only basis for a decree of foreclosure, the property sought to be charged is described as follows: "All that portion of the above-named railroad bed and right of way situated, lying, and being in said county of Lawrence, in the state of South Dakota, and said section one hundred and one thereof, under and by virtue of the lien law made and provided in such cases." And the court directed that the

same be sold at public auction, in satisfaction of plaintiff's claim above mentioned.

Chapter 31 of the Code of Civil Procedure gives an effectual lien to every person who shall perform labor of the character described in the complaint, under a contract with a railway owner, contractor, or subcontractor, upon complying with a provision requiring a just and true account of the amount due, containing a correct description of the property to be charged with said lien, to be filed with the clerk of the circuit court in the county where the property is situated, within 60 days from the last day of the month in which such labor was performed, "during which period any person who has performed such labor * * * may file a lien which shall be binding upon the erection, excavation, embankment, bridge, roadbed, or right of way, and upon all land upon which the same may be situated to the full value of such labor or material, in the county or judicial subdivision in which the same is filed. In case the. lien is sought to be enforced against the owner, the liability shall not be greater than his liability would have been to the owner (contractor) at the time the labor was performed. * * * " Comp. Laws, § 5471. As our legislature has adopted the mechanic's lien law of Iowa, so far, at least, as the same applies to this case, the decisions of that jurisdiction prior to its adoption must be considered, and, in the absence of anything to indicate a contrary view, it will be presumed, under a familiar rule of construction, that our legislature acted with full knowledge thereof, and intended to take said statute with the interpretation placed thereon by the supreme court of that state. Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227; Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N. W. 577; Westcott v. Miller, 42 Wis. 455; Freese v. Tripp, 70 Ill. 496; Coulter v. Stafford, 48 Fed. 266; Pomeroy v. Pomeroy (Wis.) 67 N. W. 430; Black, Interpret. Laws, 159. In the case of Utter v. Crane, 37 Iowa, 631, it was held, in construing a statute of which ours is a copy, that "a laborer employed by a subcontractor for

building a railroad cannot enforce a lien upon the road for the amount due him, if the contractor has fully paid the subcontractor the amount due under his contract, though the railroad company is indebted to the contractor in a sum exceeding the amount of the claim of the laborer against the subcontractor." For the protection of railroad owners and builders standing in their places, the legislature has limited their liability for labor performed under a contract or subcontract to the amount due such immediate employer under his contract or subcontract at the time the services were rendered; and it therefore follows that the material testimony of the witnesses in attendance upon the United States Circuit Court was absolutely essential to the defense pleaded, and that it was, under the circumstances, error to deny the application for a postponement of the trial until the attendance of such witnesses might be procured. The action was instituted to enforce a lien against the owner of a railroad by a sale of a single section thereof; and while it was alleged in the complaint that said owner owed $10,000 to its contractors, Fitzgerald & Bro., and that they were also indebted in a like sum to their subcontractor Fitch, by whom plaintiff's assignor was employed, no evidence was offered tending to show that at the time the labor was done, anything was due from the owner to said contractors, or from them to their subcontractors, to the legal rights of whom plaintiff is subrogated. Adopting as our own the very reasonable construction placed upon the statute by the Iowa court prior to its enactment here, we are led to the conclusion that plaintiff was entitled to no more than a personal judgment against the defendant Fitch.

Earnest effort is made, by the way of argument, to defeat the decree on the ground that the description of the property contained in the lien is fatally defective; and, as the point extends to the very groundwork of the action, the assignment of error relating thereto is entitled to careful attention at this time. As a lien of the character under consideration is purely a creature of the statute, available and operative only when

perfected in the manner therein prescribed, a substantial com-
pliance with the law in every material respect is essential to ·
its existence.   Our statute (Comp. Laws, § 5485) expressly
characterizes as a "subcontractor" every person aiding in the
construction of a railroad pursuant to a contract not made "di-
rectly with the owner, proprietor, his agent or trustee" and
Sec. 5470·requires that, in order to avail himself of the benefits
of the lien law, he shall file "with the clerk of the circuit court
of the county or judicial subdivision in which the building,
erection, or other improvement to be charged with the lien is
situated, a just and true account of the demand due him after
allowing credits and containing a correct description of the
property to be charged with said lien."   Manifestly,  the only
erection or improvement chargeable with a lien is a continuous
line of railroad, 106 miles in length, within this state, begin-
ning in Fall River county, at a point designated "Siding
Seven," and extending across the counties of Custer and Pen-
nington, into Lawrence county, terminating therein at a station
called "Kirk"; and as the railroad is an entirety, and no lien
can attach to a single section thereof, it is very evident that
the description is wholly insufficient.   Whether it would be
necessary to file the lien in every county through or into which
the road passes or extends, need not at this time be deter-
mined.   Upon the theory that railroads, by promoting the pub-
lic welfare, are advantageous to the state as a body politic, and
that it is better to suffer mischief peculiar to an individual than
an inconvenience which must, of necessity,  seriously prejudice
the public generally, the view is sustained by the greater num-
ber of well-reasoned authorities that no lien can attach to a
single section of a railroad.   It is well known that the resi-
dents and freeholders in the vicinity of our railroads have con-
tributed largely to their construction; and it would be unreas-
onable to suppose that the legislature ever intended to enact
a law by which a subcontractor or any other person may de-
prive the public of every advantage which railway facilities

afford, by the sale on execution of an inseverable section of the roadbed, and a conveyance of an absolute title thereof to the purchaser at a foreclosure sale under a mechanic's lien. As public policy forbids the acquisition of a lien upon a part of a railroad, for work done or materials furnished, a contractor who grades a section only of the road cannot file a lien on that section alone. Appelgate v. Ernst, 3 Bush. 648; Cox v. Railroad Co., 44 Cal. 18. In construing the Iowa law of which ours is a copy, the United States supreme court held that the word "improvement," in contemplation of the statute, means the entire railroad. Brooks v. Railroad Co., 101 U. S. 443; Railway Co. v. Wilcox, 122 Ind. 84, 23 N. E. 506; Chapman Valve Manufacturing Co. v. Oconto Water Co. (Wis.) 60 N. W. 1004. "A lien for labor and materials cannot be enforced against that portion or section of a railroad only for which they were furnished. The lien is against the whole road, and the whole must be sold." Knapp v. Railway Co., 74 Mo. 374. In the case of Georgia v. Atlantic & G. R. Co., 3 Woods 434, Fed. Cas. No. 5,351, the court say: "It cannot be supposed that the legislature, in authorizing its construction, and in granting it a franchise for its operation and use, ever intended that execution creditors might levy upon parcels of it, and cut it up into sections, and destroy it as a great public thoroughfare. Such a proposition is preposterous. Suppose a mile of road should be levied on and sold; would the purchaser have a right to fence it in, and take up the rails and cross-ties, and plant it, and thereby destroy the railroad? Could this be done without contemning the power of the state by which it was created and made a public highway? We think not." Mr. Jones, in his treatise on the Law of Liens, at page 1619, ably vindicates the doctrine "that a railroad is an entirety, and that a lien cannot attach to a section of it"; and, in support of the text numerous authorities are cited. As the description of the property contained in the complaint must substantially conform to that of the lien, and both be sufficiently accurate to enable the court to

decree a sale that will vest in the purchaser a tangible title to the entire improvement to which the lien must attach, if at all, it is very evident that plaintiff's lien is of no practical utility, either as an incumbrance or notice to interested persons. When a party is not entitled, as a matter of law, to the lien claimed, he cannot maintain an action in foreclosure, as a defective description cannot be aided by the averments of a complaint, nor support a judgment enlarging or extending his rights. Bertheolet v. Parker, 43 Wis. 551.

From the views herein expressed, it follows that plaintiff's lien is not enforceable, and the judgment of the trial court is therefore reversed.

HANEY, J., taking no part in the decision.