288 So.2d 749

**SPARKS CONSTRUCTION, INC.**

v.

**NEWMAN BROTHERS, INC.**

Civ. 171.

Court of Civil Appeals of Alabama.

Jan. 16, 1974.

Tweedy, Jackson & Beech, Jasper, for appellant.

Caddell, Shanks, Harris, Moores & Murphree, Decatur, for appellee.

HOLMES, Judge.

From the Circuit Court of Morgan County, Alabama, defendant-appellant Sparks Construction Company, Inc., appeals from a judgment of $4,268. The plaintiff-appellee, Newman Brothers, Inc., brought suit in the lower court against appellant and Aetna Casualty & Surety Company under a bond provided in compliance with Ala.Code, Tit. 50, § 16 (1940). Appellee sued for alleged payments due for certain materials supplied. By agreement of the parties, Aetna Casualty & Surety Company was dismissed as a party defendant.

The case was tried before a jury and at the conclusion of the evidence, the trial court, on its own motion, granted the affirmative charge without hypothesis and directed the jury to find for the plaintiff. Thereafter, the jury rendered a verdict of $4,268 and a judgment was rendered thereon.

The appellant's basic dispositive contention as raised by appropriate assignments of error is that a materialman supplying material to another materialman does not have a cause of action under Ala.Code, Tit. 50, § 16 (1940), and that the trial court erred in determining the appellee was entitled to the benefits of the aforementioned Code section.

Ala.Code, Tit. 50, § 16, provides in pertinent part as follows:

"§ 16. Bonds required; suits thereon, etc.—Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or subdivision thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges, shall be required, before commencing such work, to execute a performance bond, with penalty equal to fifty percent of the amount of the contract price, and in addition thereto, another bond with good and sufficient surety, payable to the state, county or municipal corporation or subdivision, letting the contract, in an amount not less than fifty percent of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials, feedstuffs or supplies for or in the prosecution of the work provided for in such contract, and for the payment of reasonable attorneys' fees, incurred by successful claimants or plaintiffs in suits on said bond; and any person, firm or corporation that has furnished labor, materials, feed-stuffs or supplies for or in the prosecution or repair of any public building or public work, highways or bridges, and payment for which has not been made, shall be authorized to institute an action upon said bond in his or their name or names and to have their rights and claims adjudicated in such action and judgment rendered thereon; . . ."

The facts as revealed by the stipulation of the parties and testimony indicate the following:

Sparks Construction, Inc. (hereinafter referred to as Sparks) with Aetna Casualty as surety furnished a bond in compliance with Ala.Code, Tit. 50, § 16 (1940), for the construction of an elementary school in Russellville, Alabama. The Russellville City Board of Education entered into a contract with Sparks for the construction of the school for $826,032.

Sparks entered into an agreement with B & H Steel Company which contained language as follows:

"Furnish all Structural Steel, misc. and Ornamental Iron in sufficient quantities to complete the Russellville Elementary School, Russellville, Ala. in strict accord with plans, specifications Addenda # 1 thru # 6 and Drawings R-5, R-6 and R-7, all as prepared by Barr & Tune, Architects, Alternate # 1 and # 2 have been accepted.

"Shop drawings to be submitted immediately for Architect's Approval."

The amount involved was $57,598.

B & H Steel Company ordered from Newman Brothers, Inc., $4,268 worth of rails. Newman Brothers shipped the rails to B & H Steel, c/o Russellville Elementary School, Russellville, Alabama, and sent B & H Steel an invoice for $4,268. B & H then sent an invoice to Sparks for the rails for $4,958.72.

Sparks issued checks to B & H which fully covered the amount due. Newman Brothers did not receive payment for the rails which it shipped and, thereafter, brought this action.

The appellant Sparks contends that the lower court erred in finding for the appellee, Newman. In support of this contention, the appellant urges that B & H and Newman were materialmen and, therefore, that Newman, a materialman of a materialman (B & H), cannot receive the benefit of the bond provided in Ala.Code, Tit. 50, § 16 (1940).

At the outset, we note that Ala.Code, Tit. 50, § 16 (1940), is to be liberally construed to effect the purpose of the statute. See Lloyd Wood Const. Co. v. Con-Serv, Inc., 285 Ala. 409, 232 So.2d 649; State v. Southern Surety Co., 221 Ala. 113, 127 So. 805.

We also note there can be no question but that under the law of Alabama, one furnishing material to a subcontractor has the benefit of Ala.Code, Tit. 50, § 16 (1940). See American Employers' Ins. Co. v. Lee & Kincaid Coal Co., 226 Ala. 262, 146 So. 408; United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622.

In order to determine whether B & H was a subcontractor or a materialman, we must define the term "subcontractor" as we are applying it in this instance. The United States Supreme Court in Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163, analyzes the term in dealing with The Miller Act, which is the federal statute comparable to our state statute dealing with bonds for public works. The court states as follows:

"Whether the word includes laborers and materialmen is not subject to easy solution, for the word has no single, exact meaning. In a broad, generic sense a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor. . . . But under the more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen. * * *" (322 U.S. at 108, 64 S.Ct. at 894)

See also J. W. Cooper Const. Co: v. Public Housing Administration, 390 F.2d 175 (10th Cir. 1968); Elmer v. United States Fidelity & Guaranty Co., 275 F.2d 89 (5th Cir. 1960).

The Supreme Court of California looked at this same question in Theisen v. County of Los Angeles, 54 Cal.2d 170, 183, 5 Cal. Rptr. 161, 169, 352 P.2d 529, 537, whereby the court stated:

"In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the job site and does the construction there. We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor nor are we interested in the sale of standard stock-in-trade doors. Specifically we are dealing with a contract whereby the doors were to be fabricated according to the specifications of the prime contract and as a constituent part of the construction of the public improvement which was the subject of the contract. We do not accept the view of some other jurisdictions (see annotation, 141 A.L.R. 321) that to be a subcontractor one must install work at the site of the improvement. Rather, we conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has 'charge of the construction' of that part of the work of improvement . . . and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building. This view accords with that of Holt & Bugbee Co. v. City of Melrose (1942), 311 Mass. 424, 426, 41 N.E.2d 562, 141 A.L.R. 319; Illinois Steel Warehouse Co. v. Hennepin Lumber Co. (1921), 149 Minn. 157, 160, 182 N.W. 994; Pittsburg Plate Glass Co. v. Sisters of the Sorrowful Mother (1901), 83 Minn. 29, 31–32, 85 N.W. 829; . . ."

We also note an excellent opinion by the Supreme Court of Minnesota in Weyerhaeuser Company v. Twin City Millwork Co., 291 Minn. 293, 191 N.W.2d 401, and cases cited therein. See also City of Purcell v. Merco Manufacturing, Inc., 324 F. Supp. 210 (W.D.Okl.1971).

Applying the above stated reasoning to the instant case, it is clear that B & H was to furnish all structural steel, ornamental iron, and miscellaneous work for Sparks. All of the above was to be in strict accord with plans and specifications. The total order from B & H called for some $57,598.

This court is of the opinion that the agreement between Sparks and B & H was a substantial part of the overall contract between Sparks and the board of education, and that B & H was a subcontractor within the purview of Ala.Code, Tit. 50, § 16 (1940). Much of the work had to be custom fabricated to meet the specifications of the elementary school building under construction. We feel the purchase order agreement between Sparks and B & H adequately reflects a substantive portion of the overall contract, and further, served notice on Sparks that the material must be custom fabricated.

Since B & H is a subcontractor, Newman, being at least a materialman to the subcontractor, is entitled to the protection afforded by the bond provided for in Ala. Code, Tit. 50, § 16 (1940).

The issue now presented is whether the lower court erred in giving the general affirmative charge without hypothesis in favor of the plaintiff-appellee. We find no error in this action of the court. We have examined the record in the case and hold that the agreed stipulation in the record and evidence presented sufficiently establish the plaintiff's allegations. After looking at all the evidence most favorable to the defendant and applying all inferences therefrom, we find no issue of fact for the jury to consider since B & H was clearly a subcontractor and therefore the plaintiff was entitled to the general affirmative charge without hypothesis. White v. State, 262 Ala. 694, 81 So.2d 267; Ballard v. First National Bank of Birmingham, 261 Ala. 594, 75 So.2d 484; Chichester v. First National Bank of Birmingham, 242 Ala. 227, 5 So.2d 772; Sims v. Herzfeld, 95 Ala. 145, 10 So. 227.

The above discussed assignment of error being dispositive of the case, and having considered all assignments of error, the case is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.